UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NARRAGANSETT INDIAN TRIBE,
ACTING BY AND THROUGH THE
NARRAGANSETT INDIAN TRIBAL
HISTORIC PRESERVATION OFFICE

    *Plaintiff,*
v.                                                                                                    C.A. No.

STEPHANIE POLLACK, in her
official capacity as Acting Administrator of the
FEDERAL HIGHWAY ADMINISTRATION

and

STATE OF RHODE ISLAND
AND AGENCIES, INCLUDING THE
RHODE ISLAND DEPARTMENT
OF TRANSPORTATION

and

CLAIRE RICHARDS, individually
(Executive Counsel at Rhode Island
Office of the Governor)

    *Defendants,*

## COMPLAINT

NOW COMES Plaintiff Narragansett Indian Tribe, acting by and through the Narragansett Indian Tribal Historic Preservation Office (hereafter the "Tribe" or "NIT"), files this Complaint against The Federal Highway Administration ("FHWA"), State of Rhode Island and agencies including The Rhode Island Department of Transportation, and Claire Richards, individually. Pursuant to Local Court Rules LCvR 40.5(a)(4) this is a related case. This Complaint involves the same parties and claims filed in a prior case dismissed without prejudice. The original Complaint was transferred from the US District Court of Rhode Island to this Court by Memorandum and Order dated January 7, 2020, ECF docket no. 23, Case no. 20-576 (RC). The original Complaint

1

was amended to add the State Defendants, and the Amended Complaint, regarding both Federal and State defendants, was dismissed without prejudice by this Court on March 15, 2022. (EFC Doc no. 74).

The Court ordered the Plaintiff to address claims against the Federal Defendant on Summary Judgment. (February 24, 2021, Minute Order). And by Minute Order issued May 19, 2021, the Court stated the pending Motion to Dismiss the claims against the State of Rhode Island would not impact the issues to be briefed against the Federal Defendant on Summary Judgment. This Complaint addresses the Court's jurisdictional concerns against both Federal and State Defendants and explains why adding other parties does not undermine the claims against the Federal Defendant that has a statutory obligation to comply with the National Historic Preservation Act ("NHPA" or "the ACT"). State parties were added to highlight facts in the record that show the Federal Defendant arbitrarily reversed prior decisions and failed to follow regulations that require sufficient and enforceable mitigation measures that prevent adverse effects to historic properties. Adding State parties ensures that documents pertaining to the Federal Defendant's decision to terminate the fully executed first programmatic agreement ("PA") and exclude the Plaintiff from consultations on the second PA are part of the record in the case. Actions by an individual employed by the State as alleged in this Complaint did not prevent the Federal Defendant, FHWA, from enforcing the agreed upon mitigation measures or from consulting with the Tribal Plaintiff to develop sufficient alternative mitigation measures that prevent adverse effects. The record will show that instead of continuing to withhold highway funding from the State for failing to execute the first PA, the FHWA took deliberate actions that resulted in arbitrary and capricious agency decisions that led to noncompliance with the ACT.

## **INTRODUCTION**

1. The Plaintiff Tribe brings this action to challenge the termination of a PA entered pursuant to the regulations of the NHPA and the subsequent attempt by the FHWA to form a

second PA containing inadequate mitigation measures without consulting with the Tribe or involving the Tribe as stakeholders as required by 36 C.F.R. § 800.14(f). The termination of the first PA occurred after substantial construction had taken place on the project for which the first PA was meant to address and to resolve the adverse effects of the project on historic properties ("the Viaduct Project") to the signatory stakeholders' satisfaction. Additionally, the FHWA did not give an adequate response to the Advisory Council on Historic Preservation's ("ACHP") comments as required by 36 C.F.R. § 800.7(c)(4). The termination of the first PA after substantial work had been performed on the project, and the subsequent final decision of the FHWA was arbitrary and capricious. After funding had been given to the state and construction had begun on the project, the FHWA attempted to create a second PA without adequate consultation with the Tribe and avoided making the Tribe signatory stakeholders like they were under the first PA. The second PA also did not contain adequate mitigation for damages to historic tribal property required by the NHPA's Section 106 process. The attempt to form a second PA without tribal consultation by the FHWA was arbitrary and capricious agency action.

2. The Tribe also brings this action against the State of Rhode Island and agencies, including Claire Richards in her individual capacity as the Executive Counsel to the Governor of Rhode Island because of her involvement as a representative of the state in encouraging the FHWA to reverse its decision to withhold highway funding to the state and terminate the first PA. She then participated in the negotiations of the second PA that excluded the Tribe as a stakeholder and determined new mitigation measures without adequately consulting with the Tribe. Her communications pressured the FHWA to continue funding the State's Viaduct Project and to exclude the tribe from future negotiations that resulted in the FHWA's disregard for federal law that denied the Tribe's rights as a sovereign Indian nation.

**JURISDICTION**

3. This court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1362 (Jurisdiction Over Indian Tribes), and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment and Injunctive Relief).

4. The Administrative Procedure Act ("APA") provides a waiver of sovereign immunity as well as a cause of action against the FHWA, 5 U.S.C. § 702.

5. This court has subject matter jurisdiction over Claire Richards, the State of Rhode Island's Executive Counsel to the Governor, through 28 U.S.C. § 1331 (Federal Question) because she conspired with the FHWA to violate federal law and her actions therefore are not considered actions of the state protected by the state's sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 28 S.Ct.441 (1908). The *Ex parte Young* doctrine was affirmed in *Vann v. Kempthorne* when the court found that enjoining state officials from violating federal law was not barred by sovereign immunity. *See Vann v. Kempthorne*, 383 U.S. App. D.C. 14, 22 (2008). The Court has subject matter jurisdiction through 28 U.S.C. § 1331 (Federal Question) because Claire Richards violated federal law, and she cannot claim sovereign immunity because of the *Ex parte Young* doctrine.

**STANDING**

6. The APA affords a right of review to anyone who is "adversely affected or aggrieved by agency action." 5 U.S.C § 702. FHWA's (the Federal Defendant) termination of the first PA and subsequent attempted formation of the second PA, removing the Tribe as a stakeholder and failing to seek adequate tribal consultation, has adversely affected the Tribe's historic properties. These actions by the FHWA failed to mitigate adverse effects to the Tribe's historical site as required by the NHPA Section 106 regulations. The FHWA, by failing to comply with the NHPA, is responsible for these injuries. Federal undertakings that have adverse effects on historic properties must follow the Section 106 process.

7. The relief requested will redress these injuries by issuing a judgment requiring the FHWA to either enforce the first PA or include the Tribe in consultations to mitigate the damages to the historic Tribal properties.

8. The Tribe suffered a two-pronged injury-in-fact upon the termination of the first PA because the FHWA frustrated reliance interests the Tribe had in properties that were part of the first PA and did not adequately mitigate damage to tribal historic properties that were of major historical significance to the Tribe. The Tribe reallocated $450,000 in funding from the Crandall Farm Transportation Enhancement Project and $446,250 in funding from a U.S. Fish and Wildlife Congressional grant towards the acquisition of tribal properties as per the first PA. In addition, a tribal member sold to the State of Rhode Island what is known as the Chief Sachem Night Hawk property based on the representation by the FHWA that the property (long held in fee by the family of the Tribal member) would later be transferred to the tribe under the terms of the first PA. FHWA's termination of the first PA frustrated these reliance interests and created a lack of adequate mitigation for the damage to the historic tribal properties (the Viaduct properties). Furthermore, when the first PA was terminated, the funds allocated from the two grants were not returned to the Tribe. Instead, both grants were returned to the respective granting parties, creating a $896,250 loss in funding to the Tribe.

9. The Tribe suffered procedural injury-in-fact because of the first PA due to the failure of the FHWA to follow the regulations under the Section 106 process. FHWA did not provide a proper summary of its reasoning for the termination of the first PA (to all consulting parties and the public) that satisfied the requirements of 36 C.F.R. § 800.7(c)(4). The FHWA failed to explain its decision to discontinue enforcing the first PA. The FHWA could have withheld funds to the state to facilitate the enforcement of the first PA as recommended by ACHP in its comments, but the FHWA did not. Thus, the June 28, 2018, notice by the FHWA did not satisfy the requirements of 36 C.F.R. § 800.7(c)(4) because it did not adequately

provide a rationale for the termination of the first agreement or address the ACHP's comments and recommendations.

10. The Tribe suffered procedural injury-in-fact because of the second PA due to the failure of the FHWA to consult them as the historic tribe. 36 C.F.R. § 800.14(f). The FHWA formed the second PA without the "appropriate government-to-government consultation" with the historic Tribe affected by the damage caused by the Viaduct Project. 36 C.F.R. § 800.14(f).

11. The procedural injuries alleged here adversely affected concrete interests of the Plaintiff that were protected by the regulatory procedures of Section 106. When claiming a procedural injury, the party must also assert a concrete interest, not just a pure violation of procedure. *See Campaign Legal Ctr. v. FEC*, 860 F. App'x 1, 4 (D.C. Cir. 2021). In this case, the FHWA's inadequate reasoning for the termination of the first PA and failure to address the ACHP's recommendation that the tribe was the appropriate party to ensure the preservation of the properties mentioned in the PA affected concrete interests of the tribe. In FHWA's attempt to create a second PA, the omission of the Tribe as a stakeholder and FHWA's failure to adequately consult with the Tribe resulted in unmitigated damage to the Viaduct properties affecting concrete interests of the Tribe. Therefore, damage to the tribal historic properties is both quantifiable and identifiable.

12. The standing elements of causation and redressability have different requirements in cases involving procedural rights, and the Tribe asserts multiple procedural rights. As the Supreme Court explained in *Lujan v. Defs. of Wildlife*, "[t]he person who has been accorded a procedural right . . . can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 n.7 (1992). In *Massachusetts v. EPA*, the court established a different requirement in procedural rights cases: the requested relief should prompt the injury-causing party to reconsider the decision that caused the injury. *See Massachusetts v. EPA*, 549 U.S. 497, 518 (2007). In the present case,

the lack of provided reasoning for the termination of the first PA and the lack of consultation with the Tribe during the attempt to create a second PA resulted in inadequate mitigation. The FHWA's termination of the first PA without providing adequate reasoning, if revisited by the Agency, could result in the reinstatement of the first PA. If the Tribe were adequately consulted on the second PA, it could result in alternative mitigation measures that would adequately address harm to the historic, tribal properties. In both cases, FHWA's actions and decisions should be revisited and made to comply with the NHPA. By complying with the NHPA, FHWA would have to reconsider both injury-causing decisions, which satisfies the requirements of *Massachusetts v. EPA. Id*.

13. The standing element of causation is satisfied in this case because the FHWA caused the procedural injuries through its failure to mitigate the damage to the historic, tribal properties. The injuries-in-fact are all results of the actions of the FHWA that failed to comply with the requirements of the NHPA. The FHWA's violations of the NHPA were not contingent on the actions of the State of Rhode Island. As ACHP commented, the FHWA had tools available to enforce the first PA. In fact, the FHWA withheld funding on the Viaduct Project when the State refused to honor the executed agreement. Then, the FHWA arbitrarily reversed its decision to withhold funding from the state after it accepted the tribal grant funding for the purchase of those properties. Continuing to withhold funding from the state was reasonable, feasible, and viable, and it would have ensured the eventual transfer of the properties subject to the PA and honored the reliance interest of the Tribe. The grant funding was never returned to the Tribe.

14. The court in *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.* applied a heightened standard for establishing standing where causation and redressability rely on the actions of a third party. *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004). When the government regulates third-party action and there is a causal relationship

between the government regulation and third-party conduct, the court has noted that plaintiffs have standing to challenge those government actions. *See id* at 941 (citing *Tozzi v. HHS*, 350 U.S. App. D.C. 40 (2001)). The FHWA was directly responsible for compliance with the NHPA and the administration of funds, and the FHWA could not release funds for the Viaduct project without a mitigation agreement that was agreed to by all stakeholders, including the State. Therefore, FHWA had a causal relationship with the State that obligated the state, as a stakeholder, to follow federal law and comply with its executed PA or, if the State did not comply, the FHWA was obligated to enforce the PA or to create another agreement that adequately mitigated the project. Here, FHWA cannot use the State as an excuse for violating the executed PA since, instead of using its authority to enforce the executed agreement, it reversed its position and attempted to create a second PA, excluding the tribe as a stakeholder and failing to adequately consult with the Tribe.

15. The standing element of redressability in this case is satisfied because the Court's declaration that the FHWA comply with the NHPA would result in either the reinstatement of the first PA or the creation of a second PA with adequate alternative mitigation measures.

16. The harm caused by the FHWA also falls within the "zone of interest" protected by the NHPA. "The zone of interests test consists of a two-part inquiry: first, determining which interests the statute at issue arguably protects and second, determining whether the agency action affects those interests." *Pye v. United States*, 269 F.3d 459, 470 (4th Cir. 2001). In this case, the NHPA is the statute at issue, so the relevant interests the statute protects is preventing the destruction and damage to historic properties. *See id*. The NHPA protects the destruction and damage to the Tribe's historic properties that are at issue in this case. The agency action directly affects those interests because both the first PA and the second PA were supposed to mitigate the damages to the properties. However, when the FHWA decided to terminate the agreement and then attempted to create a second PA, it failed to consult the tribe to adequately

mitigate the adverse effects to historic properties.

## PERSONAL JURISDICTION

17.     The court has personal jurisdiction over Claire Richards in the District of Columbia under its long arm statute § 13–423(a)(1). Although the court has held that communications with the District of Columbia do not independently establish specific jurisdiction, the court considers communications an important factor in determining specific jurisdiction under § 13–423(a)(1). *See Associated Producers, Ltd. v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, 165 (D.D.C. 2014) (finding that defendant had "transacted business" because there were communications sent by the defendant and the business relationship had a "substantial connection" with the District of Columbia); *see also I Mark Mktg. Servs., LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 156 (D.D.C. 2010) (holding that sending communications, sending wire transfers, and being registered to do business in the District of Columbia established personal jurisdiction); *see also Johns v. Newsmax Media, Inc.*, 887 F. Supp. 2d 90, 98-99 (D.D.C. 2012) (holding that sending communications, starting a business relationship, and sending payments established personal jurisdiction). In the present case, Claire Richards, the Executive Counsel for the Governor, was in contact with the FHWA, including agency personnel in Washington D.C. The communication involved the negotiations about both the first and second PA with the Tribe, FHWA, and the State of Rhode Island. She sent communications to agency personnel in the District of Columbia that influenced the termination of the first PA and the mitigation measures of the second PA. Because of the "substantial connection" between the District of Columbia and the communications between Claire Richards and the FHWA, Claire Richards is subject to personal jurisdiction in the District of Columbia under the long arm statute § 13–423(a)(1).

18.     The "government contacts" exception to § 13–423(a)(1) does not apply to the contacts of Claire Richards because the "government contacts" exception only applies to

contacts that involve First Amendment concerns. *See Lex Tex, Ltd. v. Skillman*, 579 A.2d 244, 249 (D.C. 1990). The court in *Lex Tex, Ltd. v. Skillman* noted that it "must thus determine whether the defendants can assert a First Amendment interest . . . [before] permitting [an] invocation of the "government contacts" [exception]." *Id*. First Amendment issues are not related to the core issue and contact between Claire Richards and the District: the violation of the NHPA. Furthermore, the contact between Claire Richards and FHWA was not a simple contract negotiation, but rather a process to help both FHWA and Rhode Island comply with the NHPA. Claire Richards emails to FHWA's General Counsel, located in D.C., insisting that the limited waiver of sovereign immunity was necessary to enforce the covenants, a claim rebuffed by the FHWA at the time, were part of negotiations between FHWA and Rhode Island over the PAs. Claire Richards contacts do not fall under the "government contacts" exception because Claire Richards did not simply exchange information with the federal government or petition the federal government for highway funds. Rather, Claire Richards worked directly with the federal agency and its personnel located in Washington D.C. to encourage the FHWA to continue funding the State highway project, instead of enforcing compliance with the NHPA. Both Claire Richards and the FHWA were well aware of the NHPA regulations and conspired to avoid compliance. However, it was the FHWA that took the final agency action to terminate the first PA and exclude the Tribe from consultation.

19. The Eleventh Amendment does not provide sovereign immunity from suit to Claire Richards because the Supreme Court created an exception to the Eleventh Amendment in *Ex parte Young* that "[strips the official] of [their] official or representative character and [subjects them] . . . to the consequences of [their] individual conduct." *Ex parte Young*, 209 U.S. 123, 160 (1908). Courts have clarified the *Ex parte Young* decision and determined that state officials may be sued for injunctive and comparative relief based on their official activities and such suits are not barred by the Eleventh Amendment. *See Cnty. Bd. of Arlington v. United*

*States DOT*, 705 F. Supp. 2d 25, 30 (D.D.C. 2010). Suits against state officials are not considered suits against the state itself, but rather they are considered suits against officials in their individual capacity. *See West v. Holder*, 60 F. Supp. 3d 190, 194 (D.D.C. 2014).

## VENUE

20. Venue is proper in this case under 28 U.S.C. § 1391(b). The FHWA violated the NHPA. The violation occurred in the District of Columbia. Thus, a "substantial part" of the events of this claim occurred in the District of Columbia. 28 U.S.C. § 1391(b).

21. The claim against Claire Richards is based on her communications with FHWA in which she negotiated for the termination of the first PA by FHWA, unless the Tribe agreed to waive sovereignty as to the properties. The termination of the first PA and lack of consultation with the Tribe on the second PA led to insufficient mitigation under the NHPA Section 106 process. Thus, a "substantial part" of the events was in the District of Columbia. 28 U.S.C. § 1391(b).

## PARTIES

22. Plaintiff, The Narragansett Indian Tribe, by and through NITHPO, is the duly created political entity responsible for historic preservation pursuant to the National Historic Preservation Act, § 101(d)(2) Agreement between the National Park Service, U.S. Department of Interior and the Narragansett Indian Tribe, dated August 7, 1996.

23. Defendant Stephanie Pollack in her official capacity as Acting Administrator of the Federal Highway Administration ("FHWA") represents an executive agency of the United States.

24. Defendant State of Rhode Island and its Agencies, including the RIDOT, agreed to cooperate with the FHWA and comply with both federal regulations and law when it received federal funding. They further accepted responsibility for compliance with federal law and regulations by voluntarily taking a lead role in drafting and negotiating the first and second

PA.

25. Defendant Claire Richards, individually, Executive Counsel to the Rhode Island Governor, communicated with Defendant FHWA on behalf of the State of Rhode Island and encouraged the termination of the first PA and the exclusion of the Tribe from the negotiations of the second PA, in violation of the NHPA, thereby acting without state authority.

## NATIONAL HISTORIC PRESERVATION ACT

26. Congress enacted the NHPA, 54 U.S.C. §§ 300101 et seq., to preserve America's historic and cultural heritage. Congress declared that "the historical and cultural foundations of the Nation should be preserved as a living part of our community life and development in order to give a sense of orientation to the American people" and that "the preservation of [our] irreplaceable heritage is in the public interest so that its vital legacy of cultural, educational, esthetic, inspirational, economic, and energy benefits will be maintained and enriched for future generations of Americans." Section 1 of the National Historic Preservation Act, Pub. L. No. 89-665, as amended by Pub. L. No. 96-515.

27. Section 106 of the NHPA requires all federal agencies to "take into account" the impact of federal undertakings on historic properties.

28. Federal agencies are required to consult with Indian Tribes on a government-to-government basis. Moreover, federal regulations provide that "the Federal Government has a unique legal relationship with Indian tribes set forth in the Constitution of the United States, treaties, statutes, and court decisions. Consultation with Indian tribes should be conducted in a sensitive manner respectful of tribal sovereignty." 36 C.F.R. § 800.2(c).

29. When an undertaking will adversely affect one or more historic properties, the federal agency must engage in consultation to "develop and evaluate alternatives or modifications to the undertaking that could avoid, minimize, or mitigate [those] adverse effects." 36 C.F.R. § 800.6.

30. Decisions made regarding comments from the ACHP require that the agency making the decision prepare "a summary of the decision that contains the rationale for the decision and evidence of consideration of the Council's comments" as well as provide "a copy of the summary to all consulting parties." 36 C.F.R. § 800.7(c)(4).

## GENERAL ALLEGATIONS

31. FHWA has provided substantial funding for the replacement of the I-95 Providence Viaduct Bridge No. 578 project in Providence, Rhode Island (the Viaduct Project), including funding under Title 23 of the United States Code.

32. As a recipient of federal funds, including Title 23 funds, the Viaduct Project qualifies as an "undertaking" pursuant to the NHPA.

33. Section 106 of the NHPA requires federal agencies to account for the effect of any federal undertaking on any historic property protected by the NHPA before licensing or expending funds for such undertaking. 54 U.S.C. § 306108.

34. FHWA determined that implementation of the Viaduct Project would result in adverse effects on the Providence Covelands Archaeological District (RI 935).

35. The Tribe attaches religious and cultural significance to the Providence Covelands Archaeological District (RI 935).

36. Instead of undergoing a Phase III archaeological data recovery program to mitigate the effects of the Viaduct Project—because such a program would not have been feasible due to environmental, logistical, and cost factors—FHWA developed the PA ("Programmatic Agreement") amongst itself, the Tribe, the Rhode Island State Historic Preservation Office ("RISHPO"), and the Rhode Island Department of Transportation ("RIDOT").

37. Upon information and belief, the actual costs of conducting a Phase III archaeological data recovery program would have exceeded thirty million ($30,000,000) dollars.

38. Pursuant to 36 C.F.R. Part 800, governing Section 106 of the National Historic Preservation Act of 1966, as amended, Plaintiff, Defendant, RIDOT, and RISHPO executed the first PA, effective October 3, 2011, to govern the implementation of the Viaduct Project and to account for the foreseen and unforeseen future effects of the Viaduct Project on historic properties.

39. Pursuant to the first PA, FHWA, in coordination with RIDOT, agreed, *inter alia*, to certain stipulations requiring the acquisition and transfer of land to Plaintiff, which stipulations were amended on January 17, 2013, in Amendment No. 1 to the PA.

40. Stipulation 3 of the amended first PA requires "FHWA in coordination with RIDOT" to acquire and transfer ownership of certain parcels of land to the Tribe, including: (a) the Salt Pond Archaeological Preserve (RI 110), Town of Narragansett Tax Assessor's Plat W, Lot 81, Lot 82/Subdivision Lots 27-79 and Lot 82/Subdivision Lots A (portion), B, C, E (portion), F, G, H, I, J and K; (b) the so-called "Providence Boys Club - Camp Davis" property (a 105+/- acre parcel), Town of Charlestown Tax Assessor's Plat 19, Lot 75; and (c) the so called "Chief Sachem Night Hawk" property, located at 4553 South County Trail (Tax Assessor's Plat 22, Lot 9-1) in the Town of Charlestown, Rhode Island (all three properties collectively referred to as the "Mitigation Properties").

41. The first PA provided that the Salt Pond Archaeological Preserve was to be transferred to the Tribe as a joint owner with the State of Rhode Island.

42. Ownership of the Providence Boys Club – Camp Davis and Chief Sachem Night Hawk properties was to be transferred solely to the Tribe with "[a]ppropiate covenants that preserve the property and its cultural resources in perpetuity[.]"

43. To help facilitate the acquisition of the Salt Pond Archaeological Preserve, the Tribe authorized the release of $446,250 to FHWA which was being held pursuant to an escrow agreement with U.S. Fish and Wildlife and the Tribe.

14

44. An additional $450,000 was re-allocated by FHWA and RIDOT from the Tribe's Crandall Farm Transportation Enhancement Project towards the costs of acquisition of the Mitigation Properties.

45. The Mitigation Properties have inherently historic, cultural, and religious significance to the Tribe.

46. The Chief Sachem Night Hawk property was actually acquired by RIDOT from a Tribal member of the Plaintiff Tribe with the express understanding that the property would then be transferred back to the Tribe as part of the first PA.

47. The first PA never required the Tribe to waive its sovereign immunity with respect to the transfer of the Mitigation Properties.

48. Construction of the Viaduct Project began in June 2013.

49. Despite ongoing and continuous construction of the Viaduct Project, and in violation of the executed PA, the RIDOT announced that it would not transfer the Providence Boys Club – Camp Davis and Chief Sachem Night Hawk properties to the Tribe unless the Tribe specifically waived its sovereign immunity with respect to those two properties and entered into a covenant to subject the properties to the civil and criminal laws and jurisdiction of the State of Rhode Island.

50. The RIDOT's decision to seek a waiver of the Tribe's sovereign immunity was at the request of Claire Richards, the Executive Counsel to the Rhode Island Governor, and was contrary to legal advice given by the General Counsel of FHWA that failure to implement the first PA would be a violation of the NHPA.

51. On September 1, 2016, FHWA advised RIDOT that the failure to satisfy the "section 106 commitment to transfer these properties to the Tribe . . . stems from RIDOT's insistence that the Tribe waive its sovereign immunity as a prerequisite to transferring the property, a requirement not included in the programmatic agreement[.]"

52. Claire Richards in correspondence with FHWA disagreed with its opinion and insisted that the State of Rhode Island would not agree to first PA without a waiver of the Tribe's sovereign immunity, thus insisting the Tribe disavow its status and federally recognized sovereign Indian Nation.

53. The southbound lane of the Viaduct Project was completed and opened to traffic in the Fall of 2016.

54. The construction of the southbound lane of the Viaduct Project through the Providence Coveland District has resulted in damage to and despoliation of sites of historical, cultural, and religious significance to the Tribe without any appropriate archaeological investigation being conducted.

55. The despoliation of historically, culturally, and religiously significant sites is in violation of the American Indian Religious Freedom Act, 42 U.S.C. § 1996.

56. FHWA, reversed its prior position that the State of Rhode Island was required to transfer properties (Providence Boys Club – Camp Davis and Chief Sachem Night Hawk) without a waiver of the Tribes Sovereign immunity and terminated the first PA on January 19, 2017

57. On May 3, 2017, the Advisory Council on Historic Preservation ("ACHP") issued comments to the FHWA regarding the termination of the first PA.

58. FHWA was required to account for the ACHP's comments in making a final decision on how to proceed with the undertaking.

59. The ACHP's comments recommended that: (a) the Viaduct Project should not be delayed; (b) the Salt Pond Archaeological Preserve should be preserved as agreed to in the first PA; and (c) the Providence Boys Club – Camp Davis and Chief Sachem Night Hawk properties should be transferred to the Tribe as sole owners, without covenants, without waiver of sovereign immunity, but with the state retaining jurisdiction.

60. On June 28, 2018, FHWA, "tak[ing] into consideration the [ACHP's] comments dated May 3, 2017" determined that it would "reinitiate Section 106 consultation for the project and draft a new PA committing to the below mitigation items to address the known and potential adverse effects to historic properties on the I-95 Viaduct Project in Rhode Island."

61. The new mitigation items identified by FHWA were as follows: (a) transfer of the Salt Pond Archaeological Preserve as contemplated by the first PA; and (b) in lieu of the land transfers of the Providence Boys Club – Camp Davis and Chief Sachem Night Hawk properties, implementation of an "academic-level historic context document about the Tribe; Section 106 training provided to the Tribe; a video documentary about the Tribe; and a teaching curriculum for Rhode Island public schools about the Tribe."

62. The second PA, executed on September 18, 2019, was negotiated without the Tribe's consultation in violation of 36 C.F.R. § 800.14(f).

63. The June 28, 2018, determination by FHWA constitutes final agency action from FHWA regarding the termination of the first PA.

64. The execution of the second PA on September 18, 2019, constitutes final agency action from FHWA regarding the creation of the second PA.

65. The final action of FHWA has resulted in a complete failure to address and mitigate the adverse effects of the Viaduct Project, including the destruction of the site that has resulted from completion of the southbound lane of the Viaduct Project.

## COUNT I

**(Violation of the Administrative Procedure Act)**

66. The Tribe repeats, alleges, and incorporates the foregoing paragraphs as if fully set forth herein.

67. The Tribe has been aggrieved by agency action under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq.

68. The first PA, entered into amongst the various parties, was intended by the parties to address and mitigate the adverse effects of the Viaduct Project.

69. The termination of the first PA and the decision of the FHWA to reinitiate Section 106 consultation, while simultaneously dictating new mitigation items, fails to recognize that the entire southbound lane of the Viaduct Project was constructed without its effects being mitigated, and thus failed to comply with the section 106 process and in violation of the NHPA.

70. Similarly, expenditure of Title 23 funds on the southbound lanes without complying with the NHPA and NEPA constitutes a violation of Title 23.

71. Furthermore, the decision of the FHWA to not address the ACHP's comments in its summary to terminate the first PA was in violation of 36 C.F.R. 800.7(c)(4).

72. FHWA's decision to terminate the first PA, and simultaneously dictating new proposed mitigation terms without consultation with the Tribe—was an arbitrary and capricious final agency decision and in violation of 36 C.F.R. 800.14(f).

73. The final decision of the FHWA is in violation of the NHPA and its implementing regulations in several respects, including:

   a. Permitting RIDOT to commence and complete construction of the entire southbound lane of the Viaduct Project without any mitigating measures for the adverse effects on the Providence Covelands Archaeological District (RI 935), nor completion of NHPA and NEPA;

   b. Failing to provide a rationale for the final decision or provide any evidence of consideration of the ACHP's comments before issuing its final decision;

   c. Failing to enforce the first PA and facilitate the transfer of the mitigation properties contained in the PA before permitting RIDOT to commence and complete construction of the entire southbound portion of the Viaduct Project and to begin construction on the northbound portion of the Viaduct Project; and

        d. Attempting to impose new mitigation terms by creating a second PA without consulting the Tribe or including the Tribe as a stakeholder.

74. The Defendant Claire Richards acting on behalf of the State of Rhode Island, encouraged the FHWA to disregard ACHP's comments and terminate the first PA. She also encouraged the exclusion of the tribe as a stakeholder, or consulting party for the creation of new mitigation terms thus violating significant public policy that the NHPA was created to protect. Therefore, her bad actions conspiring to violate Federal Law waived the state's sovereign immunity, and the state cannot now use the Eleventh Amendment protections to avoid compliance with federal law that requires consultation with the Tribe to ensure adequate mitigation of undertakings that have adverse effects on tribal historic properties. These communications between Claire Richards and the FHWA are part of the administrative record and should be produced to the Plaintiff and the Court.

### PRAYER FOR RELIEF
### Against Defendant FHWA and Defendant Claire Richards on behalf of the State of Rhode Island

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant FHWA and State Defendants and provide the following relief:

1. Declare that the Viaduct Project violates the NHPA and APA;

2. Declare that Defendant FHWA violated the NHPA by failing to address the adverse effects of the Viaduct Project on historic property, including property of cultural and religious significance to the Tribe;

3. Enjoin the Defendant FHWA from taking any action in furtherance of implementing the Viaduct Project until Defendant come into compliance with the NHPA;

4. Declare Defendant Claire Richards actions that intentionally encouraged the termination of the first PA and the exclusion of the tribe as a stakeholder or consulting party in the second PA, violated the NHPA and APA, and thus waived of the state's sovereign immunity.

5. Enjoin the Defendant FHWA and State Defendants from taking any action to transfer or facilitate the transfer of the Mitigation Properties contrary to the first PA;

6. For the failure of the Defendants to comply with the section 106 process of the NHPA and adequately mitigate the adverse effects to historic properties award Plaintiff compensatory damages of Thirty Million Dollars ($30,000,000) for the destruction of and damage of sites of cultural and religious significance to the Tribe within the Providence Covelands Archaeological District (RI 935);

7. Award Plaintiff their attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act and the NHPA;

8. Award such other and further relief as the Court may deem just and proper.

Respectfully submitted,

NARRAGANSETT INDIAN TRIBE BY AND THROUGH THE NARRAGANSETT INDIAN TRIBAL HISTORIC PRESERVATION OFFICE

By its Attorneys,

/s/ Craig C. Reilly
The Office of Craig C. Reilly, Esquire
D.C. Bar No. 383594
209 Madison Street, Suite 501
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
Counsel for the Plaintiff

Dated August 3, 2022